SYLVIA BAIZ
California Bar No. 124367
The Granger Building
964 Fifth Avenue, Suite 214
San Diego, California 92101
Telephone: (619) 544-1410
Facsimile: (619) 544-1473

Attorney for Defendant **Esparza**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HON. LARRY A. BURNS)**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**ANTONIO ESPARZA PEREZ,**<br><br>Defendant. | Criminal No. **08-CR-2522-LAB**<br><br>Date: September 8, 2008<br>Time: 2:00 p.m.<br><br>**1) COMPEL DISCOVERY; AND**<br>**2) DISMISS INDICTMENT;**<br>**3) SUPPRESS STATEMENTS;**<br>**4) LEAVE TO FILE FURTHER MOTIONS** |

TO: KAREN HEWITT, UNITED STATES ATTORNEY, AND
DAVID D. LESHNER, ASSISTANT UNITED STATES ATTORNEY

**PLEASE TAKE NOTICE** that on September 8, 2008 at 2:00 p.m., or as soon thereafter as counsel may be heard, the defendant, Antonio Esparza Perez by and through his counsel, Sylvia Baiz, will hereby move this Court to grant the above-entitled motions.

//

//

//

//

//

//

//

**MOTIONS**

The defendant, Antonio Esparza Perez, by and through his attorney, Sylvia Baiz, and pursuant to Rules 12, 16, 24(a) of the Federal Rules of Criminal Procedure and Rules 404, 403, 609 of Federal Rules of Evidence any and all applicable local rules, hereby moves this Court to grant the following motions:

1) compel discovery;

2) dismiss the indictment;

3) suppress statements; and

4) leave to file further motions

These motions are based upon the attached statement of facts and memorandum of points and authorities, the files and records in the above-captioned matter, and any and all other evidence brought before this Court before or during the hearing on this motion.

Respectfully submitted,

Dated: August 18, 2008

/s/ Sylvia Baiz
**SYLVIA BAIZ**
Attorney for Defendant **Esparza Perez**

**SYLVIA BAIZ**
California Bar No. 124367
The Granger Building
964 Fifth Avenue, Suite 214
San Diego, California 92101
Telephone: (619) 544-1410
Facsimile: (619) 544-1473

Attorney for Defendant **Esparza**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HON. LARRY A. BURNS)**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff,<br>v.<br>**ANTONIO ESPARZA PEREZ,**<br>Defendant. | Criminal No. **08-CR-2522-LAB**<br>Date: September 8, 2008<br>Time: 2:00 p.m.<br>**STATEMENT OF FACTS AND SUPPORT OF DEFENDANT'S MOTIONS** |

**I.**

**STATEMENT OF FACTS**

Mr. Esparza was arrested on June 30, 2008, two miles west of the Calexico port of entry. Agents learned through a computer check that Mr. Esparza had previously been deported after suffering an aggravated felony so they arrested him and filed a complaint. Mr. Esparza was also questioned by agents. Mr. Esparza was indicted on July 30, 2008 with being found in the United States in violation of 8 U.S.C. §1326(a) and (b).

**II.**

**MOTION TO COMPEL DISCOVERY**

Mr. Esparza requests the following discovery pursuant to Fed. R. Crim. P. 12(b)(4) and 16:

(1) all written and oral statements made by Mr. Esparza. This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of Mr. Esparza are contained. It also includes the substance of any oral statements

which the government intends to introduce at trial. These are all discoverable under Fed. R. Crim. P. 16(a)(1)(A) and Brady v. Maryland, 373 U.S. 83 (1963). Mr. Esparza also requests any response to any Miranda warnings which may have been given to him. See United States v. McElroy, 697 F.2d 459 (2d Cir. 1982);

(2) all documents, statements, agents' reports, and tangible evidence favorable to Mr. Esparza on the issue of **guilt or punishment** and/or which affects the credibility of the government's case. This evidence must be produced pursuant to Brady v. Maryland, 373 U.S. 83, 87 (1963), and United States v. Agurs, 427 U.S. 97 (1976);

(3) all evidence, documents, records of judgments and convictions, photographs and tangible evidence, and information pertaining to any prior arrests and convictions or prior bad acts. Evidence of prior record is available under Fed. R. Crim. P. 16(a)(1)(B). Evidence of prior similar acts is discoverable under Fed. R. Crim. P. 16(a)(1)(C) and Fed. R. Evid. 404(b) and 609;

(4) all evidence seized as a result of any search, either warrantless or with a warrant, in this case. He also specifically requests copies of all photographs, videotapes or recordings made in this case. This is available under Fed. R. Crim. P. 16(a)(1)(C);

(5) all arrest reports, investigator's notes, memos from arresting officers, sworn statements and prosecution reports pertaining to Mr. Esparza, including his “A” file and the recordings of his prior deportation(s). These are available under Fed. R. Crim. P. 16(a)(1)(B) and (C), Fed. R. Crim. P. 26.2 and 12(i);

(6) the personnel file of the interviewing agent(s) containing any complaints of assaults, abuse of discretion and authority and/or false arrest. Pitchess v. Superior Court, 11 Cal. 3d. 531, 539 (1974). In addition, the defense requests that the prosecutor examine the personnel files of all testifying agents, and turn over Brady and Giglio material reasonably in advance of trial. United States v. Henthorn, 931 F.2d 29, 30-31(9th Cir. 1991). If the prosecutor is unsure as to whether the files contain Brady or Giglio material, the files should be submitted to the Court, in camera. Id. The prosecution should bear in mind that there exists an affirmative duty on the part of the government to examine the files. Id.;

(7) any and all statements made by any other uncharged co-conspirators. The defense is entitled to this evidence because it is material to preparation for the defendant's case and potentially Brady material. Also, insofar as such statements may be introduced as co-conspirator statements, they are discoverable. Fed. R. Crim. 16(a)(1)© and Brady. This evidence must be produced pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976);

(8) Mr. Esparza requests copies of any and all audio/video tape recordings made by the agents in this case and any and all transcripts, including taped recordings of any conversations of any of the agents involved in this case. Mr. Esparza specifically requests copies of the audio tape of all the deportation hearings in this case that the government intends to use in its case-in-chief.. This evidence is available under Fed. R. Crim. P. 16(a)(1)©;

(9) Mr. Esparza specifically requests the name and last known address of each prospective government witness. See United States v. Napue, 834 F.2d 1311 (7th Cir. 1987); United States v. Tucker, 716 F.2d 583 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective); United States v. Cook, 608 F.2d 1175, 1181 (9th Cir. 1979) (defense has equal right to talk to witnesses).

(10) all other documents and tangible objects, including photographs, books, papers, documents, photographs, or building or places or copies of portions thereof which are material to Mr. Esparza' defense or intended for use in the government's case-in-chief or were obtained from or belong to Mr. Esparza. Mr. Esparza also requests access to all his personal belongings seized, including his wallet, any clothes he was wearing at the time of his arrest and any baggage he had with him. Rule 16(a)(1)©;

(11) all results or reports of scientific tests or experiments, or copies of which are within the possession, control, or custody of the government or which are known or become known to the attorney for the government, that are material to the preparation of the defense, including the opinions, analysis and conclusions of experts consulted by law enforcement including finger print specialists in the instant case. These must be disclosed, once a request

is made, even though obtained by the government later, pursuant to Fed.R.Crim.Pro. 16(a)(1)(D).

(12) any express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, agreement to execute a voluntary return rather than deportation or any other kind of agreement or understanding between any prospective government witness and the government (federal, state and local), including any implicit understanding relating to criminal or civil income tax liability. United States v. Shaffer, 789 F.2d 682 (9th Cir. 1986); United States v. Risken, 788 F. 2d 1361 (8th Cir. 1986); United States v. Luc Levasseur, 826 F.2d 158 (1st Cir. 1987);

(13) any discussion with a potential witness about or advice concerning any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not followed. Brown v. Duggen, 831 F.2d 1546, 1558 (11th Cir. 1986) (evidence that witness sought plea bargain is to be disclosed, even if no deal struck); Haber v. Wainwright, 756 F.2d 1520, 1524 (11th Cir. 1985);

(14) any evidence that of any witnesses which were with Mr. Esparza at the time of his arrest or information that any prospective government witness is biased or prejudiced against the defendant, has a motive to falsify or distort his or her testimony or is prejudiced against Mexican people. Pennsylvania v. Ritchie, 480 S.Ct. 39 (1989); United States v. Strifler, 851 F.2d 1192 (9th Cir. 1988);

(15) any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction. See Rule 608(b), Federal Rules of Evidence and Brady;

(16) any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct. United States v. Chitty, 760 F.2d 425 (2d Cir.), cert. denied, 474 U.S. 945 (1985); and,

(17) any evidence, including any medical or psychiatric report or evaluation, tending to show that any prospective witness's ability to perceive, remember, communicate, or tell the truth is impaired; and any evidence that a witness has ever used narcotics or other controlled

substance, or has ever been an alcoholic. United States v. Strifler, 851 F.2d 1197 (9th Cir. July 11, 1988); Chavis v. North Carolina, 637 F.2d 213, 224 (4th Cir. 1980);

(18) the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will not be called as a government witness. Mr. Esparza specifically requests the names of the other three persons arrested with him as they are percipient witness to the manner in which they were arrested. Specifically, Mr. Esparza requests that the I-213s or any other records of their arrests be provided in discovery. United States v. Cadet, 727 F.2d 1469 (9th Cir. 1984);

(19) the name and last known address of each prospective government witness. See United States v. Napue, 834 F.2d 1311 (7th Cir. 1987); United States v. Tucker, 716 F.2d 583 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective); United States v. Cook, 608 F.2d 1175, 1181 (9th Cir. 1979) (defense has equal right to talk to witnesses);

(20) the name of any witness who made an arguably favorable statement concerning the defendant or who could not identify him or who was unsure of his identity, or participation in the crime charged. Jackson v. Wainwright, 390 F.2d 288 (5th Cir. 1968); Chavis v. North Carolina, 637 F.2d 213, 223 (4th Cir. 1980); James v. Jago, 575 F.2d 1164, 1168 (6th Cir. 1978); Hudson v. Blackburn, 601 F.2d 785 (5th Cir. 1975);

(21) Mr. Esparza requests a transcript of the grand jury testimony and rough notes of all witnesses expected to testify at the motion hearing or at trial. This evidence is discoverable under Fed. R. Crim. P. 12(I) and 26;

(22) Jencks Act Material. The defense requests all material to which defendant is entitled pursuant to the Jencks Act, 18 U.S.C. § 3500, reasonably in advance of trial, including dispatch tapes. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under §3500(e)(1). Campbell v. United States, 373 U.S. 487, 490-92 (1963). In United States v. Boshell, 952 F.2d 1101 (9th Cir. 1991), the Ninth Circuit held that when an agent goes over interview notes with the subject of the interview the notes are then subject to the

Jencks Act. The defense requests pre-trial production of Jencks material to expedite cross-examination and to avoid lengthy recesses during the pre-trial motions hearings or trial. Mr. Esparza specifically requests rough notes regarding the interview of Mr. Esparza, especially if the notes reflect the time and place of those statements. Mr. Esparza puts the government on notice that he will seek rough notes of any and all testifying agents on the date set for the motion hearing, and requests that the agent/witnesses be instructed to bring the notes to court.

## III.

## THE INDICTMENT MUST BE DISMISSED OR LIMITED TO A TWO YEAR STATUTORY MAXIMUM BECAUSE THE INDICTMENT FAILS TO CHARGE THAT DEFENDANT WAS CONVICTED OF AN AGGRAVATED FELONY PRIOR TO REMOVAL.

The Fifth Amendment of the United States Constitution "requires that a defendant be convicted only on charges considered and found by a grand jury." United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999). An indictment's failure to allege an essential elements of the charged offense "is not a minor or technical flaw subject to harmless error analysis, but a fatal flaw requiring dismissal of the indictment." Id. In Du Bo, the indictment failed to allege an implied *mens rea* requirement. That failure was fatal to the indictment. See Id., at 1179-81. "The complete failure to charge an essential element of a crime ... 'is by no means a mere technicality.'" Id., at 1180 (quoting United States v. King, 587 F.2d 956, 963 (9th Cir. 1978)).

Due to the lack of the requisite *mens rea*, the Ninth Circuit found that the indictment was defective in two fundamental ways. First, because it lacked an element, the Du Bo court could not be sure that the jury convicted on the same facts presented to the Grand Jury. Id., at 1179. The Du Bo court could "only guess whether the grand jury received evidence of, and actually passed on, Du Bo's intent." Id. Second, absent the *mens rea* allegation, the indictment "lacks a necessary allegation of criminal intent, and as such does not 'properly allege an offense against the United States.'" Id., at 1180 (quoting United States v. Morrison, 536 F.2d 286, 289 (9th Cir. 1976)). A complete failure to allege an element is generally a fatal defect. Id. In Du Bo, the Ninth Circuit held that the failure to allege the mens rea

requirement was such a defect. Id. It therefore ordered the indictment dismissed. Id., at 1180-81.

The Ninth Circuit reiterated the holding that "indictment's failure to 'recite an essential element of the charged offense is not a minor technical flaw. . . but a flaw requiring dismissal of the indictment.'" United States v. Pernillo Fuentes, 252 F.3d 1030 (9th Cir.2001), citing United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999). In Pernillo Fuentes, the government charged the defendant with attempted entry, but did not allege the specific intent element as required by Gracidas-Ulibarry, 231 F.3d 1188 (9th Cir. 2000 (en banc). As a consequence, the Ninth Circuit reversed Pernillo Fuentes' conviction and ordered that the indictment be dismissed.

More recently, in United States v. Salazar-Lopez , 506 F.3d 748 (9th Cir. 2007) the defendant-appellant renewed his contention that his exposure to § 1326(b)'s higher statutory maximum violated Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), because neither the date of his prior removal nor the temporal relationship between the removal and his prior conviction was alleged in the indictment and proved to a jury. The Court agreed and found that in Salazar Lopez, "...the temporal relationship between Salazar-Lopez's removal and his previous conviction was a fact that increased the maximum sentence that he faced. As such, the date of the removal, or at least the fact that Salazar-Lopez had been removed *after* his conviction, should have been alleged in the indictment and proved to the jury. The failure to do so was an *Apprendi* error." Id. at 752.

The indictment here is defective because it fails to allege that Mr. Esparza was deported subsequent to an aggravated felony (or any felony) conviction. Thus, the indictment as returned clearly fails to charge a violation of section 1326(b). Mr. Esparza requests that the indictment be dismissed due to this structural omission for failing to allege an element of the offense, i.e., that he was deported or removed subsequent to and aggravated felony (any felony) conviction. In the alternative, if Mr. Esparza is forced to proceed to trial based on the indictment as it exists and he is convicted, the conviction would be limited to a conviction under section 1326(a) which provides a maximum sentence of two years. Because

the government has not alleged either a section 1326(b)(1) or 1326(b)(2), the maximum that Mr. Esparza should receive at sentencing is two years.

In Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219 (1998), a five Justice majority held that the government can prove the crime of being found in the United States after deportation without proving the fact of prior conviction. The fact of the prior conviction could be proved to the judge during a sentencing hearing without offending the Fifth or Sixth Amendment of the Constitution. Soon after Almendarez-Torres, a five-four decision written by Justice Thomas, the Supreme Court embarked on a series of cases holding that any fact which increases the maximum punishment must be charged and proven to the jury beyond a reasonable doubt. This line of cases began with Jones v. United States 526 U.S. 227, 119 S.Ct. 1215 (1999), where the Supreme Court addressed the issue of when disputed factors in a criminal case are considered elements of the offense rather than sentencing factors. The Jones Court distinguished its opinion in Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219 (1998) stating "the holding last Term [in Almendarez-Torres] rested in substantial part on the tradition of regarding recidivism as a sentencing fact, not as an element to be set out in the indictment." Jones, 526 U.S. at pp.248-249, 119 S.Ct. at p. 1227. In so holding, the Supreme Court opined that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to jury, and proven beyond a reasonable doubt." Id., 526 U.S. at p.243 n.6, 119 S.Ct. at p. 1224 n.6. Most important for this Court, however, is that fact that in Jones, Justice Thomas switched sides indicating that the Almendarez-Torres decision was in question since the five Justice majority had been broken and five justices now agreed with the dissent in Almendarez-Torres which opined that prior convictions which raised the maximum possible sentence had to pled and proved to the jury beyond a reasonable doubt. Then in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000) the Supreme Court announced the constitutional rule that under the Sixth Amendment, any fact that increases the maximum punishment must be proved to the jury beyond a reasonable doubt. More important for the instant case, Justice Thomas wrote an extensive dissent in which he

repudiated his opinion in Almendarez-Torres indicating that if presented with the issues in Almendarez-Torres he would side with the minority thereby tilting the vote and making the Almendarez-Torres minority opinion the majority holding. Almendarez-Torres, 530 U.S. at 520-521; 120 S.Ct. at 2379. The minority in Almendarez-Torres stated that any fact – whether a fact related to the commission of the charged offense or the fact of a prior conviction – which increases the maximum possible sentence must be proved to the jury beyond a reasonable doubt. Almendarez-Torres, 523 U.S. at 248-271; 118 S.Ct. at 1233-1244. The import of this statement is that after Jones and Apprendi a majority of the Supreme Court now is of the opinion that even prior convictions must be pled and proved to a jury beyond a reasonable doubt.

The readiness of the Supreme Court to readdress and overrule Almendarez-Torres was made clear this past week in Shepard v. United States, 544 U.S. 13 (2005). Indeed, it seems that Almendarez-Torres should already be considered bad law according to Justice Thomas's concurrence:

> Almendarez-Torres, like Taylor, has been eroded by this Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that Almendarez-Torres was wrongly decided. See 523 U.S., at 248-249, 118 S.Ct. 1219 (SCALIA, J., joined by STEVENS, SOUTER, and GINSBURG, JJ., dissenting); Apprendi, supra, at 520-521, 120 S.Ct. 2348 (THOMAS, J., concurring). The parties do not request it here, but in an appropriate case, this Court should consider Almendarez-Torres ' continuing viability. Innumerable criminal defendants have been unconstitutionally sentenced under the flawed rule of Almendarez-Torres, despite the fundamental "imperative that the Court maintain absolute fidelity to the protections of the individual afforded by the notice, trial by jury, and beyond-a-reasonable-doubt requirements." Harris v. United States, 536 U.S. 545, 581-582, 122 S.Ct. 2406 (2002) (THOMAS, J., dissenting).

Thus, it seems clear that the rules of Apprendi through Booker the government must plead and prove the prior conviction which it seeks to use to enhance Mr. Delgado's enhancement. Mr. Delgado believes there are only two possible remedies to the government's failure to plead the prior conviction: (1) proceed to trial on the current indictment but limit the conviction to a section 1326(a) conviction with a two year maximum sentence; (2) dismiss the indictment for failure to charge all the elements.

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court held that "'it is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.'" Apprendi, 530 U.S. at 490 (quoting Jones v. United States, 526 U.S. 227, 252-53 (1999) (Stevens, J., concurring)); accord Jones, 526 U.S. at 253 (Scalia, J., concurring) ("it is unconstitutional to remove from the jury the assessment of facts that alter the congressionally prescribed range of penalties to which a criminal defendant is exposed"); *see also* Mullaney v. Wilbur, 421 U.S. 684 (1975); In re Winship, 397 U.S. 358 (1970). In reaching that conclusion, the Supreme Court acknowledged that its previous decision in Almendarez-Torres v. United States, 523 U.S. 224 (1998), was at least problematic in that its holding does not seem to comport with the plain constitutional rule announced in Apprendi. *See* Apprendi, 530 U.S. at 487 (describing Almendarez-Torres as "represent[ing] at best an exceptional departure from the historic practice we have described"); *see also id.* at 489 ("it is arguable that Almendarez-Torres was incorrectly decided").

*Apprendi's* solution to the conflict between its rule and the result in Almendarez-Torres was to treat the latter as an aberrational – and strictly limited – decision addressing only the sufficiency of the indictment in that case. See Apprendi, 530 U.S. at 487-88. In short, it represented an odd result owing to its peculiar facts. In Almendarez-Torres, the defendant was charged with a "found in" section 1326 offense, but his indictment did not allege that he had previously been deported after having suffered aggravated felony convictions. Almendarez-Torres, 523 U.S. at 227. Even so, during his guilty plea Almendarez Torres "admitted that he had been deported, and that he had later unlawfully returned to the United States, and that the earlier deportation had taken place 'pursuant to' three earlier 'convictions' for aggravated felonies." Id. (quoting from the record). It was against this highly unusual factual backdrop that Almendarez-Torres analyzed an objection at sentencing that the indictment contained no allegations of the prior convictions -- convictions which the petitioner admitted as part of his guilty plea.

Apprendi noted these odd facts, *see* 530 U.S. at 487, concluding that, in light of the admissions under oath, "[b]oth the certainty that procedural safeguards attached to any 'fact' of prior conviction, and the reality that Almendarez-Torres did not challenge the accuracy of that 'fact' in his case, mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a 'fact' increasing punishment beyond the maximum of the statutory range." *Id.* at 488. Thus, "no question concerning the right to a jury trial or the standard of proof that would apply to a contested issue of fact was before the Court" when it rendered its decision in Almendarez-Torres. Id. Nor was there any real issue as to the sufficiency of the indictment. See United States v. Cotton, 535 U.S. 625 (2002). Because Mr. Esparza exercised his Fifth Amendment grand jury right, and his Sixth Amendment right to jury trial, his case squarely presents the issues that Apprendi observed were left open in Almendarez-Torres. See id.

The recent decisions of United States v. Booker, 543 U. S. 220 (2005) and Blakely v. Washington,542 U.S.296 (2004), reconfirm that Apprendi limits, if not directly overrules, Almendarez-Torres to situations where the individual admits the prior convictions during a guilty plea. Blakely holds, "[o]ur precedents make clear, however, that the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 124 S.Ct. at 2537 (emphasis in original). See also id. at 2543 ("As Apprendi held, every defendant has the *right* to insist that the prosecutor prove to a jury all facts legally essential to the punishment")(emphasis in original). The only way to read Blakely as not directly overruling Almendarez-Torres, is by limiting Almendarez-Torres to its facts -- where the individual admits the prior conviction during a guilty plea.

"Almendarez-Torres . . . stands for the proposition that not every fact expanding a penalty range must be stated in a felony indictment, the precise holding being that recidivism increasing the maximum penalty need not be so charged." Jones v. United States, 526 U.S. 227, 248 (1999); accord Apprendi, 530 U.S. at 487-88. That "precise holding" cannot stand in light of Blakely, Apprendi and the Fifth and Sixth Amendment right to indictment by a

Grand Jury. A majority of Justices agree that Almendarez-Torres does not survive Apprendi. In Apprendi, the majority asserted that "it is arguable that Almendarez-Torres was wrongly decided," Apprendi, 530 U.S. at 489. More importantly, Justice Thomas, who cast the fifth and deciding vote in Almendarez-Torres, has admitted that his vote was erroneous. Apprendi, 530 U.S. at 518-20 (Thomas, J., concurring). Even the Apprendi dissent recognized that Almendarez-Torres cannot be followed without disregarding Apprendi. See Apprendi, 530 U.S. at 535 (O'Connor dissenting) ("Almendarez-Torres constituted a clear repudiation of the rule the Court adopt[ed in Apprendi]"); *accord id.* at 559 (the distinction between the section 1326 scheme at issue in Almendarez-Torres and the New Jersey scheme at issue in *Apprendi* is "a difference without constitutional significance"). Almendarez-Torres no longer commands a majority of the members of the Court, *see id.* at 518-20 (Thomas, J., concurring), and Justice O'Connor, joined by Chief Justice Rehnquist and Justices Kennedy and Breyer, has recognized that Apprendi and Almendarez-Torres cannot be reconciled. See id. at 535 (O'Connor dissenting). Moreover, the Court has recently indicated a desire to directly overrule Almendarez-Torres and reconcile the cases requiring that any and all facts which increase the maximum punishment must be pled and proven beyond a reasonable doubt to a jury.

The Supreme Court has long made it clear that the indictment must both contain all of the elements of the offense and give the defendant notice. See, e.g., Russell v. United States, 369 U.S. 749, 763-64 (1962)("the indictment [must] contain[] the elements of the offense intended to be charged, and sufficiently apprize[] the defendant of what he must be prepared to meet") (internal quotations, citations omitted); accord Stirone v. United States, 361 U.S. 212, 216-19 (1960). The Fifth and Sixth Amendment rights discussed in Russell are applicable to all elements: "The Court has not suggested in its previous opinions . . . that there is a difference . . . between, on the one hand, a right to a jury determination, and, on the other, a right to notice by indictment and to a determination based upon proof by the prosecution beyond a reasonable doubt." Jones, 526 U.S. at 269 (Kennedy, J., dissenting). In short, if there is a right to jury trial as to a particular element, there is also a right to a Grand

Jury determination of probable cause and notice.

Indeed, Apprendi itself makes clear that there should be no dichotomy between jury trial rights and Grand Jury rights. The historical precedent upon which Apprendi relies squarely supports the proposition that any fact which increases the statutory maximum must not only be submitted to the jury and proved beyond a reasonable doubt, it must also be alleged in the indictment. See Apprendi, 530 U.S. at 478 (citing J. Archbold, Pleading and Evidence in Criminal Cases 44 (15th ed. 1862) and 4 Blackstone 369-70); see also id. at 480 ("Just as the circumstances of the crime and the intent of the defendant at the time of commission were often essential elements to be alleged in the indictment, so too were the circumstances mandating a particular punishment"); Ex Parte Bain, 121 U.S. 1, 12-13 (1887) ("We are of the opinion that an indictment found by the grand jury was indispensable to the power of the court to try the petitioner for the crime with which he was charged"). In short, "'the indictment must contain an allegation of every fact which is legally essential to the punishment to be inflicted.'" Id. at 489 n.15 (quoting United States v. Reese, 92 U.S. 214, 232-33 (1875) (separate opinion of Clifford, J.)); accord United States v. Hooker, 841 F.2d 1225, 1228 (4th Cir. 1988) (observing that "[i]t is elementary that every ingredient of [a] crime must be charged in the bill" and collecting cases) (internal quotations omitted).

Blakely reaffirmed this historical precedent. *See* Blakely, 124 S. Ct. at 2536 (stating that the Apprendi rule "reflects two longstanding tenets of common-law criminal jurisprudence: that the 'truth of every accusation' against a defendant 'should afterwards be confirmed by the unanimous suffrage of twelve of his equals and neighbors,' 4 W. Blackstone, Commentaries on the Laws of England 343 (1769), and that 'an accusation which lacks any particular fact which the law makes essential to the punishment is ... no accusation within the requirements of common law, and it is no accusation in reason.' 1 J. Bishop, Criminal Procedure § 87, p. 55 (2d ed. 1872)"). There is no basis for failing to apply this reasoning to the fact of prior conviction. See Apprendi, 530 U.S. at 505 (Thomas, J., concurring); accord Almendarez-Torres, 523 U.S. at 248-60 (Scalia, J., dissenting).

IV.

**MR. ESPARZA'S STATEMENTS MUST BE SUPPRESSED.**

Mr. Esparza was questioned upon his arrest by agents. Agents were mistreating him and threatened him using cuss words and he felt that he had no choice, but to speak with them. His statements were not knowing and voluntary.

It is the government's burden, upon challenge by the defendant, to establish the admissibility of any custodial statement obtained from a defendant. Mr. Esparza puts the government to its proof on this issue. Custodial interrogation conducted to secure incriminating statements from an accused must be preceded by procedural safeguards. Miranda v. Arizona, 348 U.S. 437 (1966). Once a person is in custody, Miranda warnings must be given before any interrogation. "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to . . . counsel." Miranda v. Arizona, 384 U.S. at 475. No evidence or statement obtained through a custodial interrogation may be used at trial unless and until the government demonstrates that the defendant received Miranda warnings prior to the statement and validly waived her rights. Id. 384 U.S. at 479.

If the government contends that Mr. Esparza waived his Fifth Amendment rights, it must prove that he did in fact waive his rights. The government's burden, in proving a valid waiver of Miranda, is high. 384 U.S. at 475. This Court must "indulge every reasonable presumption against waiver" of Miranda rights. United States v. Heldt, 745 F.2d 1275, 1277 (9th Cir. 1984). The validity of the waiver "depends . . . 'upon the particular facts and circumstances surrounding [the] case, including the background, experience and conduct of the accused.'" Edwards v. Arizona, 451 U.S. 477, 482, reh'g denied, 452 U.S. 973 (1981) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).

In addition to proving Miranda warnings and a valid waiver, the government must also establish, by a preponderance of evidence, that any statement was given voluntarily. Lego v. Twomey, 404 U.S. 477, 484 (1972). This is a separate requirement: a confession

admitted in violation of Miranda violates a defendant's Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel; a coerced confession also violates a defendant's right to due process of law. See Jackson v. Denno, 378 U.S. 368, 376 (1964).

A voluntary statement is one which is the product of a "rational intellect" and a "free will." Blackburn v. Alabama, 361 U.S. 199, 208 (1960). No one factor is determinative. Rather, this Court must look to the "totality all of the surrounding circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). Among the many factors which the Court can weigh is the age of the accused, his education and intelligence, advice as to constitutional rights, length of detention, repeated and prolonged nature of the questioning and use of physical punishments. 412 U.S. at 226. A statement may not be admitted if because of mental illness, drugs, or intoxication, the statement was not the product of a rational intellect and a free will. Gladden v. Unsworth, 396 F.2d 373, 380-81 (9th Cir. 1968).

When law enforcement officers use psychological pressure to break down the will of an accused, all statements elicited thereby are deemed involuntary. See Spano v. New York, 360 U.S. 315 (1959). A confession is involuntary whether it occurs by physical intimidation or psychological pressure. Townsend v. Sain, 307 U.S. 293 (1963). Subtle psychological coercion, either by promises of leniency or indirect threats, may also render a confession involuntary. United States v. Tingle, 658 F.2d 1332, 1335 (9th Cir. 1981).

In the instant case, Mr. Esparza made several statements after his arrest, but he was utterly intoxicated. It is clear from the video-taped statement that this was the case as Mr. Esparza was unable to keep his eyes open during questioning. Therefore, the government bears the burden of proving that Mr. Esparza: 1) was fully advised of his Miranda rights; 2) freely, voluntarily and knowingly waived these rights; and 3) made the statement freely and voluntarily and whether the statements were suppress because they were beyond the 6-hour safe harbor rule required by section 18 U.S.C. 3501.

To establish the legality and admissibility of the defendant's statements, the

government must show compliance with Miranda v. Arizona and establish by a preponderance of the evidence that the defendant's statement was given voluntarily. An evidentiary hearing in this matter is thus necessary. United States v. Batiste, 868 F.2d 1414 (9th Cir. 1989) (holding that a district court has complete discretion to hold an evidentiary hearing whenever a Fourth Amendment violation is alleged and in footnote 5, implying that an evidentiary hearing must be held if a Fifth Amendment violation is alleged). In addition, Title 18 U.S.C. §3501 requires a hearing on voluntariness prior to the admission of any defendants' statement.

## V.

## MOTION FOR LEAVE TO FILE FURTHER MOTIONS

Mr. Esparza has filed all motions he deems to be relevant at this time. However, he requests permission to reserve the right to file further motions in response to additional discovery, investigation or documents filed by the government, including his recorded statements, his A-file and recorded deportation hearing.

## VI.

## CONCLUSION

For the above stated reasons, it is respectfully requested that the Court grant the above motions.

Respectfully submitted,

/s/ Sylvia Baiz

Dated: August 18, 2008

**SYLVIA BAIZ**
Attorney for Defendant **Esparza**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** Plaintiff, v. **ANTONIO ESPARZA PEREZ,,** Defendant. | Criminal No. **08-CR-2522-LAB** Date: September 8, 2008 Time: 2:00 p.m. **PROOF OF SERVICE** |

IT IS HEREBY CERTIFIED THAT:

I, SYLVIA BAIZ, am a citizen of the United States and am at least eighteen years of age. My business address is 964 Fifth Avenue, Suite 214, San Diego, California, 92101.

I am not a party to the above-entitled action. I have caused service of the **NOTICE OF MOTIONS AND MOTIONS; STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTIONS** on the following parties by electronically filing the foregoing with the clerk of the District Court using its ECF System, which electronically notifies them.

Judge Larry A. Burns efile_burns@casd.uscourts.gov

Assistant United States David.Leshner@usdoj.gov

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 7, 2008.

/s/ Sylvia Baiz
SYLVIA BAIZ