KAREN P. HEWITT
United States Attorney
DAVID D. LESHNER
Assistant U.S. Attorney
California State Bar No. 207815
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7163
David.Leshner@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANTONIO ESPARZA-PEREZ,<br><br>Defendant. | Criminal Case No. 08-CR-2522-LAB<br><br>DATE: September 8, 2008<br>TIME: 2:00 p.m.<br><br>**UNITED STATES' RESPONSE AND OPPOSITION TO MOTIONS TO:**<br><br>**(1) COMPEL DISCOVERY;**<br>**(2) DISMISS INDICTMENT**;<br>**(3) SUPPRESS STATEMENTS; AND**<br>**(4) GRANT LEAVE TO FILE FURTHER MOTIONS** |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and David D. Leshner, Assistant United States Attorney, and hereby files its response and opposition to defendant Antonio Esparza Perez' motions to compel discovery, dismiss the indictment, suppress statements and grant leave to file further motions. Said response and opposition is based upon the files and records of this case together with the attached memorandum of points and authorities.

/ / /

/ / /

/ / /

## MEMORANDUM OF POINTS AND AUTHORITIES

## I

## STATEMENT OF THE CASE

On July 30, 2008, a one-count indictment was filed charging defendant Antonio Esparza-Perez with a violation of Title 8, United States Code, Sections 1326(a) and (b). Defendant was arraigned on the indictment on July 31, 2008 and entered a plea of not guilty.

## II

## STATEMENT OF FACTS

### A. Defendant's Apprehension

On June 30, 2008, Border Patrol Agent C. Nonas-Truong was on duty approximately two miles west of the Calexico, CA West Port of Entry. At approximately 9:20 p.m., a Remote Video Surveillance ("RVS") operator observed two individuals crossing from Mexico into the United States by climbing over the border fence. Agent Nonas-Truong responded to the area and encountered the two individuals hiding north of Anza Road.

Agent Nonas-Trunog conducted field interviews, and both Defendant and the other individual admitted to being citizens of Mexico without documents allowing them to enter or remain in the United States. At that point, Agent Nonas-Truong placed Defendant under arrest.

Defendant subsequently received Miranda warnings and declined to answer questions.

### B. Defendant's Immigration History

Defendant is a citizen of Mexico. On or about November 3, 1999, Defendant was removed from the United States to Mexico pursuant to an Order of an Immigration Judge. Defendant subsequently was removed from the United States to Mexico on July 19, 2007.

### C. Defendant's Criminal History

On October 11, 1994, Defendant was convicted of lewd and lascivious acts upon a child under the age of 14, in violation of California Penal Code § 288(a). Defendant received a three-year prison sentence. On November 7, 2005, Defendant was convicted of illegal re-entry, in violation of 8 U.S.C. § 1326, and sentenced to 27 months custody.

/ / /

**III**

**DEFENDANT'S MOTIONS**

**A. Motion To Compel Discovery**

To date, the Government has provided Defendant with 72 pages of discovery and one DVD, including reports of his arrest, his rap sheet, and copies of immigration and conviction documents. In an attempt at simplification, this memorandum will address two specific areas of discovery: (1) items which the Government either has provided or will voluntarily provide; and (2) items demanded and discussed by Defendant which go beyond the strictures of Rule 16 and are not discoverable.

**1. Items which the Government has provided or will voluntarily provide.**

a. The Government will disclose to Defendant and make available for inspection, copying or photographing: any relevant written or recorded statements made by Defendant, or copies thereof, within the possession, custody, or control of the Government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the Government; and that portion of any written record containing the substance of any relevant oral statement made by Defendant whether before or after arrest in response to interrogation by any person then known to Defendant to be a Government agent. The Government also will disclose to Defendant the substance of any other relevant oral statement made by Defendant whether before or after arrest in response to interrogation by any person then known by Defendant to be a Government agent if the Government intends to use that statement at trial.

b. The Government will permit Defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the Government, and which are material to the preparation of Defendant's defense or are intended for use by the Government as evidence during its case-in-chief at trial, or were obtained from or belong to Defendant;[1]

/ / /

---

[1] Rule 16(a)(1)(C) authorizes defendants to examine only those Government documents material to the preparation of their defense against the Government's case-in-chief. United States v. Armstrong, 517 U.S. 456, 463 (1996). Rule 16 does not require the disclosure by the prosecution of evidence it intends to use in rebuttal. United States v. Givens, 767 F.2d 574, 583 (9th Cir. 1984).

c. The Government will permit Defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are in the possession, custody or control of the Government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the Government, and which are material to the preparation of his defense or are intended for use by the Government as evidence during its case-in-chief at trial;[2]

d. The Government has furnished to Defendant a copy of his prior criminal record, which is within its possession, custody or control, the existence of which is known, or by the exercise of due diligence may become known to the attorney for the Government;

e. The Government will disclose the terms of all agreements (or any other inducements) with cooperating witnesses, if any are entered into;

f. The Government may disclose the statements of witnesses to be called in its case-in-chief when its trial memorandum is filed;[3]

g. The Government will disclose any record of prior criminal convictions that could be used to impeach a Government witness prior to any such witness' testimony;

h. The Government will disclose in advance of trial the general nature of other crimes, wrongs, or acts of Defendant that it intends to introduce at trial pursuant to Rule 404(b) of the Federal Rules of Evidence;

i. The Government acknowledges and recognizes its continuing obligation to disclose exculpatory evidence and discovery as required by Brady v. Maryland, 373 U.S. 83 (1963),

---

[2] The Government need not "disclose every single piece of paper that is generated internally in conjunction with scientific tests." United States v. Iglesias, 881 F.2d 1519, 1524 (9th Cir. 1989).

[3] Production of these statements is governed by the Jencks Act and need occur only after the witness testifies on direct examination. United States v. Mills, 641 F.2d 785, 789-790 (9th Cir. 1981); United States v. Dreitzler, 577 F.2d 539, 553 (9th Cir. 1978). For Jencks Act purposes, the Government has no obligation to provide the defense with statements in the possession of a state agency. United States v. Durham, 941 F.2d 858, 861 (9th Cir. 1991). Prior trial testimony does not fall within the scope of the Jencks Act. United States v. Isigro, 974 F.2d 1091, 1095 (9th Cir. 1992). Further, an agent's recorded radio transmissions made during surveillance are not discoverable under the Jencks Act. United States v. Bobadilla-Lopez, 954 F.2d 519, 522-23 (9th Cir. 1992). The Government will provide the grand jury transcripts of witnesses who have testified before the grand jury if said testimony relates to the subject matter of their trial testimony. Finally, the Government reserves the right to withhold the statement of any particular witness it deems necessary until after the witness testifies.

Giglio v. United States, 405 U.S. 150 (1972), the Jencks Act and Rules 12 and 16 of the Federal Rules of Criminal Procedure, and will abide by their dictates.[4]

**2. Items which go beyond the strictures of Rule 16**

**a. Defendant's requests for specific Brady information or general Rule 16 discovery.**

It is well-settled that prior to trial, the Government must provide a defendant in a criminal case with evidence that is both favorable to the accused and material to guilt or punishment. Pennsylvania v. Richie, 480 U.S. 39, 57 (1987); United States v. Agurs, 427 U.S. 97 (1976); Brady v. Maryland, 373 U.S. 83, 87 (1963). As the Supreme Court has explained, "a fair analysis of the holding in Brady indicates that implicit in the requirement of materiality is a concern that the suppressed evidence may have affected the outcome of the trial." Agurs, 427 U.S. at 104. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985) (emphasis added). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Richie, 480 U.S. at 57 (citation omitted).

The Supreme Court has repeatedly held that the Brady rule is not a rule of discovery; rather, it is a rule of fairness and is based upon the requirement of due process. Bagley, 473 U.S. at 675, n. 6. The Supreme Court's analysis of the limited scope and purpose of the Brady rule, as set forth in the Bagley opinion, is worth quoting at length:

> Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur. [footnote omitted]. Thus, the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial: "For unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; and absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose . . . but to reiterate a critical point, the prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial.

---

[4] Brady requires the Government to produce all evidence that is material to either guilt or punishment. The Government's failure to provide the information required by Brady is constitutional error only if the information is material, that is, only if there is a reasonable probability that the result of the proceeding would have been different had the information been disclosed. Kyles v. Whitley, 514 U.S. 419 (1995). However, neither Brady nor Rule 16 require the Government to disclose inculpatory information to the defense. United States v. Arias-Villanueva, 998 F.2d 1491 (9th Cir. 1993).

Id. at 675 (emphasis added, citation omitted). The Government will comply with the Brady mandate.

**b. Disclosure of witness information**

Defendant seeks numerous records and information pertaining to potential Government witnesses. Regarding these individuals, the Government will provide Defendant with the following items prior to any such individual's trial testimony:

(1) The terms of all agreements (or any other inducements) it has made with cooperating witnesses, if they are entered into;

(2) All relevant exculpatory evidence concerning the credibility or bias of Government witnesses as mandated by law; and,

(3) Any record of prior criminal convictions that could be used to impeach a Government witness.

The Government opposes disclosure of rap sheet information of any Government witness prior to trial. See United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). Furthermore, any uncharged prior misconduct attributable to Government witnesses, all promises made to and consideration given to witnesses by the Government, and all threats of prosecution made to witnesses by the Government will be disclosed if required by Brady and Giglio.

**c. Agents' rough notes**

Although the Government has no objection to the preservation of agents' handwritten notes, the Government objects to their production at this time. If during any evidentiary proceeding, certain rough notes become relevant, these notes will be made available.

Prior production of these notes is not necessary because they are not "statements" within the meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a witness' assertions and they have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980); United States v. Kaiser, 660 F.2d 724, 731-32 (9th Cir. 1981); United States v. Griffin, 659 F.2d 932, 936-38 (9th Cir. 1981).

/ / /

/ / /

/ / /

**d. Government reports, summaries and memoranda**

Rule 16 provides, in relevant part:

> [T]his rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by the attorney for the government or other government agent in connection with the investigating or prosecuting of the case.

Rule 16(a)(2). This subsection exempts from disclosure documents prepared by government attorneys and agents that would otherwise be discoverable under Rule 16. United States v. Fort, 472 F.3d 1106, 1110 & n.2 (9th Cir. 2007).

As expressed previously, the Government recognizes its obligations pursuant to Brady, Giglio, Rule 16, and the Jencks Act.[5] But the Government shall not turn over internal memoranda or reports which are properly regarded as work product exempted from pretrial disclosure.[6] Such disclosure is supported neither by the Rules of Evidence nor case law and could compromise other areas of investigation still being pursued.

**e. Addresses and phone numbers of Government witnesses**

Defendant requests the name and last known address and phone of each prospective Government witness. While the Government may supply a tentative witness list with its trial memorandum, it objects to providing home addresses and telephone numbers. See United States v. Sukumolachan, 610 F.2d 685, 688 (9th Cir. 1980); United States v. Conder, 423 F.2d 904, 910 (9th Cir. 1970) (addressing defendant's request for the addresses of actual Government witnesses).

**f. Personnel files of federal agents**

Pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and United States v. Cadet, 727 F.2d 1453 (9th Cir. 1984), the Government agrees to review the personnel files of its federal law enforcement witnesses and to "disclose information favorable to the defense that meets the appropriate standard of materiality . . . ." Cadet, 727 F.2d at 1467-68. Further, if counsel for the United States is uncertain about the materiality of the information within its possession, the material will be submitted to the court for in-camera inspection and review. In this case, the Government will ask the affected law

---

[5] Summaries of witness interviews conducted by Government agents are not Jencks Act statements. United States v. Claiborne, 765 F.2d 784, 801 (9th Cir. 1985).

[6] The Government recognizes that the possibility remains that some of these documents may become discoverable during the course of the trial if they are material to any issue that is raised.

enforcement agency to conduct the reviews and report their findings to the prosecutor assigned to the case.

In United States v. Jennings, 960 F.2d 1488 (9th Cir. 1992), the Ninth Circuit held that the Assistant U.S. Attorney assigned to the prosecution of the case has no duty to personally review the personnel files of federal law enforcement witnesses. In Jennings, the Ninth Circuit found that the present Department of Justice procedures providing for a review of federal law enforcement witness personnel files by the agency maintaining them is sufficient compliance with Henthorn. Id. In this case, the Government will comply with the procedures as set forth in Jennings.

Finally, the Government has no duty to examine the personnel files of state and local officers because they are not within the possession, custody or control of the Federal Government. United States v. Dominguez-Villa, 954 F.2d 562 (9th Cir. 1992).

**g. Reports of witness interviews**

To date, the Government does not have any reports regarding witness interviews or otherwise that have not been turned over to Defendant. However, to the extent that such additional reports regarding witness interviews are generated, the information sought by Defendant is not subject to discovery under the Jencks Act, 18 U.S.C. § 3500.

Reports generated in connection with a witness's interview session are only subject to production under the Jencks Act if the witness signed the report or otherwise adopted or approved the contents of the report. See 18 U.S.C. § 3500(e)(1); United States v. Miller, 771 F.2d 1219, 1231-31 (9th Cir. 1985) ("The Jencks Act is, by its terms, applicable only to writings which are signed or adopted by a witness and to accounts which are substantially verbatim recitals of a witness' oral statements."); United States v. Friedman, 593 F.2d 109, 120 (9th Cir. 1979) (interview report containing a summary of a witness' statements is not subject to discovery under the Jencks Act); United States v. Augenblick, 393 U.S. 248, 354 (1969) (rough notes of witness interview not a "statement" covering entire interview). Indeed, "both the history of the [Jencks Act] and the decisions interpreting it have stressed that for production to be required, the material should not only reflect the witness' own words, but should also be in the nature of a complete recital that eliminates the possibility of portions being selected out of context." United States v. Bobadilla-Lopez, 954 F.2d 519, 522 (9th Cir. 1992).

**h. Expert witnesses**

The Government will disclose to Defendant the name, qualifications, and a written summary of testimony of any expert the Government intends to use during its case-in-chief at trial pursuant to Fed. R. Evid. 702, 703, or 705 three weeks prior to the scheduled trial date.

**i. Other discovery requests**

To the extent that the above does not answer all of Defendant's discovery requests, the Government opposes the motion on the grounds that there is no authority requiring the production of such material.

**B. Motion To Dismiss Indictment**

Defendant argues that the Indictment is defective because it does not allege that he was deported or removed subsequent to sustaining an aggravated felony conviction. The argument fails because there is no such legal requirement.

The Indictment alleges that Defendant "was removed from the United States subsequent to November 17, 2005."[7] This date corresponds with Defendant's conviction for a prior violation of § 1326 and post-dates his 1994 conviction for violation of California Penal Code § 288.

The Indictment's "subsequent to" allegation complies with Apprendi v. New Jersey, 530 U.S. 466 (2000) and United States v. Covian-Sandoval, 462 F.3d 1090, 1098 (9th Cir. 2006) (under Apprendi, fact of prior removal "must be proved beyond a reasonable doubt to a jury or admitted by the defendant"). The Ninth Circuit has recognized as much: "the date of the removal, or at least the fact that [the defendant] had been removed after his conviction, should have been alleged in the indictment and proved to the jury." United States v. Salazar-Lopez, 506 F.3d 748, 752 (9th Cir. 2007) (emphasis added). See also United States v. Garcia-Hernandez, 550 F. Supp. 2d 1228, 1237-38 (S.D. Cal. 2008) (Lorenz, J.) (holding that identical "subsequent to" allegation complied with Salazar-Lopez).

Defendant devotes 6 pages of this motion to arguing that the fact of his prior conviction must be alleged in the Indictment because Almendarez-Torres v. United States, 523 U.S. 224 (1998), is no longer good law. But Defendant inexplicably ignores Ninth Circuit precedent affirming the viability

[7] On August 20, 2008, the grand jury returned a superseding indictment charging Defendant with attempted entry after deportation. The Superseding Indictment contains the identical allegation as the initial Indictment concerning Defendant's prior removal.

of Almendarez-Torres. See, e.g., Salazar-Lopez, 506 F.3d at 751 n.3; Butler v. Curry, 528 F.3d 624, 643-44 (9th Cir. 2008) ("[W]e have repeatedly recognized our obligation to apply the Almendarez-Torres exception unless and until it is rejected by the Supreme Court.").

**C. Motion To Suppress**

Defendant asserts in conclusory fashion and without any supporting declaration that his statements were involuntary because "[a]gents were mistreating him and threatened him using cuss words . . ." (Mot. at 14.) His unsubstantiated argument lacks merit, and there is no basis for an evidentiary hearing.

As an initial matter, Defendant's motion erroneously assumes that he made post-arrest statements. He did not. After being advised of his Miranda rights, Defendant declined to answer questions and agents terminated the interview. Thus, the only issue is whether Defendant's field statements are admissible.

The Fourth Amendment allows officers to perform "brief investigatory stops of persons or vehicles" when "the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot." United States v. Arvizu, 534 U.S. 266, 273 (2002) (citations omitted); Terry v. Ohio, 392 U.S. 1 (1968). In forming reasonable suspicion, the officer is entitled to draw upon personal experience and specialized training and to make inferences from and deductions about the cumulative information available to him that "might well elude an untrained person." Arvizu, 534 U.S. at 273 (citation omitted). "The process does not deal with hard certainties, but with probabilities" and "commonsense conclusions about human behavior." United States v. Cortez, 449 U.S. 411, 418 (1981). Reasonable suspicion is simply "a particularized and objective basis for suspecting the person stopped of criminal activity." Ornelas v. United States, 517 U.S. 690, 696 (1996) (citation omitted). It is more than a "hunch" and less than "probable cause." Arvizu, 534 U.S. at 274.

Agent Calderon had reasonable suspicion to believe that Defendant had unlawfully entered the United States. While performing linewatch duties near the Calexico West Port of Entry, Agent Calderon received a report that two individuals had climbed over the border fence. Agent Calderon responded to the area of the illegal entry and encountered Defendant and another individual hiding nearby. The totality of these circumstances provided Agent Calderon with a "a particularized and

objective basis" for suspecting that Defendant was involved in criminal activity. Ornelas, 517 U.S. at 696.

"Given that [Agent Calderon] had reasonable suspicion to make a Terry stop, he could ask [Defendant] questions reasonably related in scope to the justification for their initiation." United States v. Cervantes-Flores, 421 F.3d 825, 830 (9th Cir. 2005) (citation omitted) (upholding admission of pre-Miranda statements made during Terry stop); United States v. Butler, 249 F.3d 1094, 1098 (9th Cir.2001) ("The case books are full of scenarios in which a person is detained by law enforcement officers, is not free to go, but is not 'in custody' for Miranda purposes.").

The Ninth Circuit's decision in Cervantes-Flores is directly on point. There, a Border Patrol agent encountered defendant Cervantes traveling alone in a rural area known for alien smuggling. Cervantes-Flores, 421 F.3d at 829. Cervantes fled, and the agent apprehended him after a foot chase. Id. The agent handcuffed Cervantes and asked him "about his place of birth, his citizenship, whether he had permission to be in the United States and how he had crossed into the United States." Id. at 830. The Court of Appeals upheld the admission of these statements because the agent had reasonable suspicion to make a Terry stop, and the questions "were reasonably limited in scope to determining whether Cervantes had crossed the border illegally." Id. Even the handcuffing did not convert the Terry stop to a custodial arrest given Cervantes' flight and the agent's safety concerns. Id.

Here, the limited questions posed by Agent Calderon concerning Defendant's immigration status were reasonably related to Agent Calderon's suspicion that Defendant had unlawfully entered the United States. Indeed, the questions are indistinguishable from those held permissible in Cervantes-Flores. As such, no Miranda warnings were required, and there is no basis for suppression. Moreover, the fact that Defendant was apprehended with another individual underscores that Miranda warnings were unnecessary because it was, in effect, a "public" stop. See United States v. Galindo-Gallegos, 244 F.3d 728, 732 (9th Cir. 2001) (upholding admission of defendant's pre-Miranda statements concerning alienage in § 1326 prosecution - "Where officers apprehend a substantial number of suspects and question them in the open prior to arrest, this is ordinarily a Terry stop, not custodial questioning . . .").

/ / /

/ / /

**2. Defendant is not entitled to an evidentiary hearing**

"An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." United States v. Howell, 231 F.3d 616, 620 (9th Cir. 2000) (citation omitted). Local Criminal Rule 47.1(g)(1) provides, in relevant part:

> Criminal motions requiring predicate factual findings shall be supported by declaration(s) . . . . The Court need not grant an evidentiary hearing where either party fails to properly support its motion or opposition.

A District Court may properly deny a request for an evidentiary hearing on a motion to suppress evidence where the defendant does not submit a declaration pursuant to a local rule. United States v. Wardlow, 951 F.2d 1115, 1116 (9th Cir. 1991). See also United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) ("[T]he defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer. In these circumstances, the district court was not required to hold an evidentiary hearing."); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (boilerplate motion containing indefinite and unsworn allegations held insufficient to require evidentiary hearing on defendant's motion to suppress statements).[8]

Here, Defendant's election not to submit a declaration is a plain violation of Local Rule 47.1(g). Further, the absence of a declaration prevents this Court from making a finding that disputed issues of fact exist in the first instance. Howell, 231 F.3d at 620. As such, the Court should deny Defendant's motion without an evidentiary hearing. Batiste, 868 F.2d at 1092 (Government proffer alone is adequate to defeat a motion to suppress where the defense fails to adduce specific and material disputed facts).

**D. No Opposition To Leave To File Further Motions**

The United States does not object to the granting of leave to allow Defendant to file further motions, so long as the order applies equally to both parties and additional motions are based on newly discovered evidence or discovery provided by the United States subsequent to the instant motion.

/ / /

---

[8] No rights are infringed by the requirement of such a declaration because the United States may not use the declaration at trial over the defendant's objection. Batiste, 868 F.2d at 1092.

**IV**

**CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court grant rule on Defendant's motions as set forth above.

DATED: August 27, 2008.

Respectfully submitted,

Karen P. Hewitt
United States Attorney

s/ David D. Leshner
DAVID D. LESHNER
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>ANTONIO ESPARZA-PEREZ,<br>Defendant. | ) | Case No. 08-CR-2522-LAB<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, DAVID D. LESHNER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **UNITED STATES NOTICE OF MOTIONS AND MOTIONS FOR FINGERPRINT EXEMPLARS AND RECIPROCAL DISCOVERY** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Sylvia Baiz, Esq.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 27, 2008.

/s/ David D. Leshner
DAVID D. LESHNER